# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

JOSTENS, INC.  §
　　　　　　　　　　　　§
　　　　　　　　　　　　§
v.　　　　　　　　　　　　§　　　　Case No. 4:20-cv-225
　　　　　　　　　　　　§　　　　Judge Mazzant
JERRY DEAN HAMMONS, JR.　§

## MEMORANDUM OPINION AND ORDER

On March 18, 2020, Plaintiff Jostens, Inc. filed suit against Defendant Jerry Dean Hammons, Jr. for civil theft in violation of the Texas Theft Liability Act, breach of fiduciary duty, and conversion (Dkt. #2). Plaintiff simultaneously filed an application for a temporary restraining order ("TRO") and a preliminary injunction (Dkt. #3). On March 19, 2020, the Court issued a TRO and scheduled a hearing on whether a preliminary injunction was warranted for April 2, 2020 (Dkt. #5). On April 1, 2020, the Court extended the TRO for good cause and continued the preliminary injunction hearing until April 16, 2020 (Dkt. #9). On April 16, 2020, the Court held the hearing on Plaintiff's application for a preliminary injunction, which Defendant failed to attend. The Court orally granted Plaintiff's request for a preliminary injunction and now enters this Order to formalize that determination.

## BACKGROUND

The undisputed evidence reflects the following facts. Plaintiff[1] is a provider of products and services that commemorate special occasions. Those products include, among other things,

---

[1] Throughout this Order, the Court refers to Jostens, Inc. and the employees through which it acts as "Plaintiff." The Court recognizes that corporations act through their employees. Indeed, three Jostens, Inc. employees—James Joy, Jennifer Miller, and John Forryan—testified at the preliminary injunction hearing about their participation in this matter. But for convenience purposes, instead of identifying each employee or actor by name throughout this Order, all actions performed by Jostens, Inc. employees, including but not limited to those who testified at the preliminary injunction hearing, are ascribed to Jostens, Inc. generally and are referred to as being carried out by "Plaintiff."

class rings, caps and gowns, yearbooks, and championship rings for sports.  Plaintiff has a jewelry making facility in Denton, Texas.  Defendant was formerly employed by Plaintiff as a security guard working the early morning shift at the Denton, Texas location.

Part of Plaintiff's jewelry making process involves scrapping certain rings and remaking them into new rings.  At the Denton, Texas facility, Plaintiff maintains an area where it keeps its scrap.  In that area, the scrap is stored in scrap carts, which are locked and contain small openings that allow the rings to be placed inside.  The holes are too small for an adult human hand to fit in.

Plaintiff recently learned that Defendant devised a means to retrieve items from the scrap carts.  Specifically, in February 2020, Plaintiff observed surveillance footage of Defendant using a device with a hook to reach through the openings in the scrap carts to extract gold rings from the previous day.  After making this discovery, Plaintiff reviewed prior security footage dating back to January 2020 and discovered that Plaintiff had been engaging in this behavior on a daily or near daily basis since then.

Plaintiff contacted the Denton Police Department, who advised Plaintiff to catch Defendant leaving the Denton, Texas facility in possession of stolen scrap.  After observing Defendant taking rings out of the scrap bins on both March 3, 2020 and March 4, 2020, Plaintiff confronted Defendant on March 4.  Plaintiff attempted to question Defendant, but he left the facility before allowing Plaintiff to finish its questioning.  He was arrested that same day shortly after leaving the facility, however, and the Denton Police Department later discovered approximately $11,000 worth of gold rings in a safe at his house and approximately $15,000 in cash.

In recent years, specifically since 2017, Defendant has acquired the following assets:

i.      the real property and improvements located at 2194 E. FM 922, Valley View, Cooke County, Texas 76272;

ii.     a 2020 Toyota Corolla LE bearing VIN 5YFEPRAE9LP105808;

2

iii.    a 2019 Dodge Ram 2500 truck bearing VIN 3C6UR5CJ5KG595569;

iv.    a 2018 Cadillac Escalade bearing VIN 1GYS3DKJ6JR295285;

v.    a 2017 Ford T-350 transit van bearing VIN 1FBZX2ZM6HKA11240;

vi.    a 2017 Dodge Ram 2500 truck bearing VIN 3C6UR5CJ6HG554232;

vii.    a 2017 Chevrolet Spark bearing VIN KL8CB6SA3HC757574;

viii.    a 2017 Jeep Wrangler bearing VIN 1C4BJWDG0HL566279;

ix.    a 2014 Nissan Rouge bearing VIN JN8AS5MTXEW618158;

x.    a 2019 Bayliner boat bearing Texas Registration No. 5357EU

xi.    a 2020 Kara boat trailer bearing VIN 5KTBS1911LF501415,

Importantly, in 2016, Defendant filed for Chapter 13 bankruptcy, in which he scheduled assets of only $39,368, debts of more than $50,000, and an annual income of approximately $71,000 between both him and his wife.  None of the above-listed assets were scheduled as such in the Chapter 13 proceeding in 2016.

Plaintiff seeks to enjoin defendant from (i) assigning, conveying, transferring, encumbering, dissipating, concealing, or otherwise disposing of any assets, moneys, or other property in Defendant's name or under his control, including but not limited to the above-named assets; (ii) accessing any amounts on deposit in Defendant's name with any bank or other financial institution unless Defendant shows the Court that he has sufficient funds or assets to satisfy all claims arising from the violations alleged in the Application and posts a bond or surety sufficient to assure payment of any such claim, excepting funds that Defendant shows the Court are for necessities; and/or (iii) wasting, injuring, or otherwise impairing any property in Defendant's possession to devalue the property or make it unsalable.

**LEGAL STANDARD**

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

**ANALYSIS**

## I.    Likelihood of Success on the Merits

A plaintiff seeking a preliminary injunction must present a prima facie case of his substantial likelihood to succeed on the merits. *See Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595-96 (5th Cir. 2011)). This does not require the plaintiff to establish his entitlement to summary judgment. *See Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009). Instead, the extent to which the plaintiff must be likely to succeed on the merits, "varies with the relative balance of threatened hardships facing each of the parties." *See Canal Authority of State of Fla. V. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). Accordingly, where the plaintiff's threatened hardships substantially outweigh the defendant's, the plaintiff need only show some chance of success. *See id.* ("[R]egardless of

4

the balance of relative hardships . . . the granting of a preliminary injunction would be inequitable if the plaintiff has no success on the merits.").

Because Plaintiff's threatened hardships substantially outweigh Defendant's, as discussed below, Plaintiff must simply show that it *may* succeed on the merits. *See Tujague v. Adkins*, No. 4:18-cv-631, 2018 WL 4816094, at *3 (E.D. Tex. Oct. 4, 2018). Plaintiff has, at a minimum, made this showing here with respect to civil theft and conversion.

A.    *Civil Theft*

Plaintiff claims Defendant is liable for civil theft under the Texas Theft Liability Act. The Texas Theft Liability Act defines "theft" with reference to the Texas Penal Code's definition of theft. Tex. Civ. Prac. & Rem. Code Ann. § 134.002; Tex. Penal Code Ann. §§ 31.03–.07, 31.11–.14. And under the Texas Penal Code, a person commits the offense of theft if he "unlawfully appropriates property with intent to deprive the owner of property" without the owner's "effective consent." Tex. Penal Code Ann. § 31.03(a)–(b).

Defendant was observed on video tape stealing Plaintiff's property from the scrap bins at Plaintiff's Denton, Texas facility. Moreover, Defendant was arrested by the Denton Police Department and found with, among other things, $11,000 worth of Plaintiff's gold rings. Defendant did not have Plaintiff's effective consent to possess those rings, and the evidence suggests Defendant intended to deprive Plaintiff of that property permanently. Accordingly, Plaintiff has satisfied the Court that it may succeed on the merits on its civil theft claim.

B.    *Conversion*

Plaintiff also claims Defendant is liable for conversion. Under Texas tort law, "[c]onversion is the wrongful exercise of dominion or control over the property of another in denial of, or inconsistent with, the other's rights in the property." *Robinson v. Nat'l Autotech, Inc.*, 117

S.W.3d 37, 40 (Tex. App.—Dallas 2003, no pet) (citing *Morey v. Page*, 802 S.W.2d 779, 786 (Tex. App.—Dallas 1990, no writ); *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971)).

To establish a claim for conversion, a plaintiff must prove that: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Tex. Integrated Conveyor Syst.*, 300 S.W.3d at 366–67 (citing *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 759 (Tex. App.—Dallas 2008, no pet.). The plaintiff must also establish that the defendant's conversion was the proximate cause of the plaintiff's injury. *See Cypress Creek EMS*, 548 S.W.3d at 685; *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex. 1997); *MJS & Assocs. v. Master*, 501 S.W.3d 751, 757 (Tex. App.—Tyler 2016, pet. denied). Much like possession for the Texas Theft Liability Act, a plaintiff may pursue a conversion action when the plaintiff either owned, possessed, or had the right of immediate possession to the property in question. *See, e.g., Great W. Drilling, Ltd. v. Alexander*, 305 S.W.3d 688, 695 (Tex. App.—Eastland 2009, no pet.); *Almance v. Shipley Bros.*, 247 S.W.3d 252, 254 (Tex. App.—El Paso 2007, no pet.); *FCLT Loans, L.P. v. Estate of Bracher*, 93 S.W.3d 469, 482 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *City of Wichita Falls v. ITT Commercial Fin. Corp.*, 827 S.W.2d 6, 8 (Tex. App.—Fort Worth 1992), aff'd in part, rev'd in part on other grounds, 835 S.W.2d 65 (Tex. 1992).

Here, Defendant took Plaintiff's gold rings and exercised dominion and control over them. Indeed, he took them from Plaintiff's locked scrap bins, without Plaintiff's consent, and stored them in a safe at his home. Plaintiff had the right of immediate possession of the property in question, and Defendant's possession of the property vis-à-vis stealing them from Plaintiff's scrap

6

bins constituted possession inconsistent with Plaintiff's rights.  Moreover, Plaintiff has provided evidence that Defendant may have used the proceeds from certain stolen rings to purchase various assets.  This is evidenced by the fact that Defendant's assets before the alleged theft were clearly insufficient to afford the assets purchased.  Thus, for many of the rings, Plaintiff has shown that it may not be able to retrieve them from Defendant even if it demanded them back.

On the whole, the Court is satisfied that Plaintiff has presented sufficient evidence to show it may succeed on the elements of conversion.  Accordingly, Plaintiff has carried its burden of showing a substantial likelihood of success on the merits with respect to its civil theft and conversion claims.

## II.      Likelihood of Irreparable Harm

A preliminary injunction is warranted only where the plaintiff shows he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600.  However, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.*  For example, a "district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds." *Id.*  As such, a plaintiff seeking economic damages is deemed to be irreparably harmed when "a meaningful decision on the merits would be impossible without an injunction." *See id.* (citing *Productos Carnics, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686–87 (5th Cir. 1980)).  For instance, a plaintiff seeking economic damages will suffer irreparable harm when the defendant's dissipation of assets would require the plaintiff to

initiate "'a multiplicity of suits . . . to gain relief.'"  *See Fed. Sav.*, 835 F.2d at 561 (quoting *Lynch Corp. v. Omaha Nat. Bank*, 666 F.2d 1208, 1212 (1981)).

Plaintiff has demonstrated that it is likely to suffer irreparable injury if a preliminary injunction is not issued.  As the record reflects, it appears that Defendant may have purchased the above-listed assets with proceeds from stolen scrap materials from Plaintiff.  This is supported by the fact that Defendant had little assets before his theft began in 2016, coupled with his modest income received as a security guard for Plaintiff. And there is a reasonable likelihood that Defendant may attempt to dissipate these assets, on which Plaintiff seeks to impose a constructive trust.  Furthermore, the Court has been advised that Defendant and his wife are in the middle of a divorce, in which their community property, which likely includes Plaintiff's property or property acquired with the proceeds of Plaintiff's property, will be divided up.  Thus, Plaintiff's property or property acquired with the proceeds of Plaintiff's property is at risk of being placed beyond Plaintiff's reach.  Injunctive relief here would thus ensure that Defendant's assets—in particular those sought to be placed in a constructive trust here—are not divided up or dissipated in such a way that a monetary judgment will be frustrated.

A preliminary injunction here that prevents Defendant from moving his assets would help ensure that the assets Defendant does have could be used to satisfy a judgment should Plaintiff prevail on the merits.  *See Janvey*, 647 F.3d at 600 (finding the plaintiff would suffer irreparable harm because "dissipation of the assets that are the subject of this suit . . . would impair the [district court's] ability to grant an effective relief").  If a preliminary injunction does not issue, on the other hand, and the assets are dissipated, Plaintiff may be forced to initiate more litigation in the future to be made whole.

### III.     Balance of Hardships

When deciding whether a preliminary injunction should issue, "courts must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted).  As a result, the Court must balance the hardship Defendant would face against the irreparable harm Plaintiff would face if a preliminary injunction does not issue, namely, the inability to obtain meaningful relief from this Court and the subsequent need to pursue additional lawsuits.  As stated, because Defendant did not appear at the evidentiary hearing or respond to Plaintiff's request for a TRO or a preliminary injunction, there is no evidence that would allow the Court to conclude that this factor at all weighs in Defendant's favor.  *See Tujague*, 2018 WL 4816094, at *3.  The Court therefore concludes that the balance of hardships factor weighs heavily in Plaintiff's favor and in favor of issuing a preliminary injunction.

### IV.     The Public Interest

Finally, for a preliminary injunction to issue, the injunction must not disserve the public.  The Court sees no reason why an injunction would here.  To the contrary, the requested injunction furthers the public's interest in protecting against civil theft and conversion.  *See Joshua Ropa v. Fox*, No. 4:16-cv-752, 2016 WL 6248743, at *4 (E.D. Tex. Oct. 26, 2016); *see also Tujague*, 2018 WL 4816094, at *4.

### V.     Security

Federal Rule of Civil Procedure 65(c) provides that the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  FED. R. CIV. P. 65(c).  In determining the appropriate amount, the Court may elect to

require no security at all.  *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Because there is presently no evidence as to the harm Defendant may face due to the injunction and because Plaintiff is, presumably, the victim of Defendant's civil theft and conversion, the Court will not require any security to be posted.

## CONCLUSION

For the foregoing reasons, Plaintiff's Verified Application for Temporary Restraining Order and Preliminary Injunction (Dkt. #3) is **GRANTED**.

It is hereby **ORDERED** that Defendant and his agents, servants, employees, and attorneys, and all other persons in active concert or participation with him who receive actual notice of this order by personal service or otherwise, are hereby enjoined from:

a.  assigning, conveying, transferring, encumbering, dissipating, concealing, or otherwise disposing of any assets, moneys, or other property in Defendant's name or under his control, including but not limited to the following to the extent they are in Defendant's name or under his control:

  i.  the real property and improvements located at 2194 E. FM 922, Valley View, Cooke County, Texas 76272;

  ii.  a 2020 Toyota Corolla LE bearing VIN 5YFEPRAE9LP105808;

  iii.  a 2019 Dodge Ram 2500 truck bearing VIN 3C6UR5CJ5KG595569;

  iv.  a 2018 Cadillac Escalade bearing VIN 1GYS3DKJ6JR295285;

  v.  a 2017 Ford T-350 transit van bearing VIN 1FBZX2ZM6HKA11240;

  vi.  a 2017 Dodge Ram 2500 truck bearing VIN 3C6UR5CJ6HG554232;

  vii.  a 2017 Chevrolet Spark bearing VIN KL8CB6SA3HC757574;

  viii.  a 2017 Jeep Wrangler bearing VIN 1C4BJWDG0HL566279;

  ix.  a 2014 Nissan Rouge bearing VIN JN8AS5MTXEW618158;

  x.  a 2019 Bayliner boat bearing Texas Registration No. 5357EU

  xi.  a 2020 Kara boat trailer bearing VIN 5KTBS1911LF501415,

       xii.   any camping trailers or recreational vehicles; and

      xiii.   any other property in Defendant's name or under his control;

    b.     accessing any amounts on deposit in Defendant's name with any bank or other financial institution unless Defendant shows the Court that he has sufficient funds or assets to satisfy all claims arising from the violations alleged in the Application and posts a bond or surety sufficient to assure payment of any such claim, excepting funds that Defendant shows the Court are for necessities; and/or

    c.     wasting, injuring, or otherwise impairing any property in Defendant's possession to devalue the property or make it unsalable.

It is further **ORDERED** that on or before April 23, 2020 or seven (7) days after service of this Order, Defendant shall make an interim accounting, under oath, detailing by date, amount, method and location of transfer, payee, payor, and purpose of payment or transfer of:

    a.     all assets, moneys, or other property obtained by Defendant, directly or indirectly, from or as a result of the activities alleged in the Application;

    b.     all of Defendant's current assets wherever they may be located and by whomever they are being held, and his current liabilities, and

    c.     all accounts with any bank, brokerage house, or other financial institution maintained by or for the Defendant at any point during the period from January 1, 2016, to the present.

Plaintiff is not required to post any bond in connection with this preliminary injunction.

It is further **ORDERED** that this preliminary injunction shall take effect immediately and remain in effect pending trial in this action or further order of the Court.

It is further **ORDERED** that due to Defendant's continued attempts to avoid service, Plaintiff is authorized, if personal service cannot be made, to serve Defendant with this Order by posting a copy of the Order at his known residence and by email.

Defendant is advised that violation of this order by Defendant could result in him being found in contempt of Court.

SIGNED this 16th day of April, 2020.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE