# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |  |
|---|---|---|
| JOSTENS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | CIVIL ACTION NO.  4:20-CV-00225 |
| v. | § | Judge Mazzant |
| | § | |
| JERRY DEAN HAMMONS, JR. and | § | |
| SANDRA LOUISE ARNOLD HAMMONS, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Compel Responses to Discovery Requests (Dkt. #41).  Having considered the motion and the relevant pleadings, the Court finds that Plaintiff's motion should be **GRANTED in part**.

## BACKGROUND

The undisputed evidence reflects the following facts.  Plaintiff is a provider of products and services that commemorate special occasions.  Those products include, among other things, class rings, caps and gowns, yearbooks, and championship rings for sports.  Plaintiff has a jewelry making facility in Denton, Texas.  Defendant was formerly employed by Plaintiff as a security guard working the early morning shift at the Denton, Texas location.

Part of Plaintiff's jewelry making process involves scrapping certain rings and remaking them into new rings.  At the Denton, Texas facility, Plaintiff maintains an area where it keeps its scrap.  In that area, the scrap is stored in scrap carts, which are locked and contain small openings that allow the rings to be placed inside.  The holes are too small for an adult human hand to fit in.

In February 2020, surveillance footage showed Defendant using a device with a hook to reach through the openings in the scrap carts to extract gold rings from the previous day.  After making this discovery, Plaintiff's employees reviewed prior security footage dating back to January 2020 and discovered that Defendant had been engaging in this behavior on a daily or near daily basis since then.

An employee of Plaintiff contacted the Denton Police Department, who advised the employee to catch Defendant leaving the Denton, Texas facility in possession of stolen scrap. After observing Defendant taking rings out of the scrap bins on both March 3, 2020 and March 4, 2020, the employee confronted Defendant on March 4.  The employee attempted to question Defendant, but Defendant left the facility before the questioning concluded.  Defendant was arrested that same day shortly after leaving the facility, however, and the Denton Police Department later discovered approximately $11,000 worth of gold rings in a safe at his house and approximately $15,000 in cash.

On December 2, 2020, the Court held a telephone conference for a discovery dispute. At the conference, the Court authorized the parties to file a motion to compel for categories of documents that may be protected by the Fifth Amendment privilege as either testimonial or incriminating.  On December 9, 2020, Plaintiff filed the present motion (Dkt. #41).  On December 23, 2020, Defendants filed their response (Dkt. #44).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense…."  FED. R. CIV. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party" (Dkt. #24 at pp. 3–4).  Moreover, the Local Rules of the Eastern District of Texas ("Local Rules") provide further guidance, indicating that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing party's contentions; … (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense."  LOCAL RULE CV-26(d).  It is well established that "control of discovery is committed to the sound discretion of the trial court."  *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1).  The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006).  Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted.  *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things.  Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  FED. R. CIV. P. 34(b)(2)(B).  "An

objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection."  FED. R. CIV. P. 34(b)(2)(C).  On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest."  FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection, certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law.  FED. R. CIV. P. 26(g).  This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection."  FED. R. CIV. P. 26(g) advisory committee's note to 1983 amendment.

The Federal Rules of Civil Procedure follow a proportionality standard for discovery.  FED. R. CIV. P. 26(b)(1).  Under this requirement, the burden falls on courts and parties to consider the proportionality of all discovery in resolving discovery disputes.  FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 amendment.  This rule relied on the fact that each party has a unique understanding of the proportionality to bear on the particular issue.  *Id.*  For example, a party requesting discovery may have little information about the burden or expense of responding.  *Id.*  "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination."  *Id.*

### ANALYSIS

Plaintiff asks the Court to compel the production of "financial records[,] . . . documents concerning . . . [the] disposition of gold rings and other items taken from [Plaintiff], and . . . documents concerning the assets [Defendants] have acquired since April 2016" from Defendant Jerry Dean Hammons, Jr. (Dkt. #41 at p. 4).  Specifically, Plaintiff contends that the Fifth Amendment protection asserted by Defendant does not apply to the discovery requests at

4

issue.  Further, Plaintiff claims that Defendant waived many of his objections "by making boilerplate over broad, unduly burdensome, and relevant objections (Dkt. #41 at p. 8).

Defendant responds that "[m]any of the requested documents could be used against Defendant in criminal court" and thus he properly invoked the Fifth Amendment (Dkt. #44 at p. 2). Further, Defendant asserts that "tax returns produced clearly reflect Defendant has legally obtained the money to purchase all the property in question" (Dkt. #44 at p. 2).

## I.   Fifth Amendment Right Against Self-Incrimination

The Fifth Amendment offers protection against compelled self-incrimination so that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.   The Fifth Amendment "can be asserted in any proceeding, civil or criminal, administrative or judicial; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."  *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972).  "To qualify for the Fifth Amendment privilege against self-incrimination, a communication must be (1) testimonial in character, (2) incriminating, and (3) compelled."  *United States v. Velasquez*, 881 F.3d 314, 337 (5th Cir. 2018) (citing *United States v. Hubbell*, 530 U.S. 27, 34 (2000)).  "In order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information."  *Id.* (citing *Doe v. United States* (*Doe I*), 487 U.S. 201, 210 (1988)).

Defendant invokes the Fifth Amendment in response to each of Plaintiff's discovery requests.  However, "[a] party is not entitled to decide for himself whether he is protected by the fifth amendment privilege."  *S.E.C. v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981).  "Rather, this question is for the court to decide after conducting a 'particularized inquiry,

deciding, in connection with each specific area that the questioning party seeks to explore, whether or not the privilege is well-founded.'" *Id.* (quoting *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1969) (footnote omitted)).   Thus, "a blanket invocation of the [F]ifth [A]mendment privilege is insufficient to relieve a civil litigant of the responsibility to answer questions put to him during the civil discovery process and to claim the privilege with respect to each inquiry." *Id* at 669 (collecting cases).

The Fifth Amendment "privilege applies to documents as well as to testimony" and "[u]pon valid invocation of the privilege, an individual's potentially incriminating papers are protected from production." *Nat. Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 468 (5th Cir. 1996) (first citing *United States v. Davis*, 636 F.2d 1028 (5th Cir.), *cert. denied*, 454 U.S. 862 (1981); and then citing *Rogers v. Webster*, 776 F.2d 607 (6th Cir. 1985)).   The documents requested by Defendant fall into three categories: (1) financial records, including, but not limited to, bank statements and tax returns[1], (2) documents concerning the disposition of the items allegedly stolen by Defendants, and (3) documents concerning assets acquired since the alleged theft in April of 2016.   The Court must therefore make the "particularized inquiry" necessary to determine "whether or not the privilege is well-founded" in "each specific area that [Plaintiff] seeks to explore." *Roundtree*, 420 F.2d at 852.

Plaintiff generally asserts that the Fifth Amendment privilege is inapplicable to its requests for production.   One specific argument offered by Plaintiff is that the sought-after documents do not fall under the Fifth Amendment's act of production protection.   "To receive Fifth Amendment protection under the 'act of production privilege,' two requirements must be satisfied: (1) [t]he act of producing the documents must have 'testimonial aspects'" and "(2) the documents must be self-

---

[1] In the telephone conference held by the Court, the Court ordered Defendant produce tax returns for the years 2016, 2017, 2018, and 2019.  Plaintiff does not argue that those tax returns have not been produced.

incriminating." *In re Sambrano Corp.*, 441 B.R. 562, 566 (Bankr. W.D. Tex. 2010).  Because "the act of production" of documents "may itself implicitly communicate statements of fact," the Fifth Amendment generally protects those acts of production that would cause a witness to "admit that the papers existed, [that the papers] were in [the witness's] possession or control[] and were authentic." *Hubbell*, 530 U.S. at 36 (collecting cases).

Further, Plaintiff contends that even documents potentially falling within the act of production doctrine are not protected due to the Fifth Amendment's foregone conclusion exception.  The foregone conclusion exception applies when the party seeking the production of potentially incriminating documents already knows the existence and location of the papers. *Fisher v. United States*, 425 U.S. 391, 411 (1976).  When the existence and location are already known, the party opposing production of the documents "adds little or nothing to the sum total of the [party's] information by conceding that he in fact has the papers." *Id.*  To properly invoke the exception, a party must, at minimum, "show[] prior knowledge" of the "existence or the whereabouts of the documents ultimately produced." *Hubbell*, 530 U.S. at 29.

Plaintiff also asserts that "if the documents were not prepared by the defendant, then the act of production does not apply so long as the production of documents does not confirm their existence or authenticity" (Dkt. #41 at p. 6).  The Court will address the applicability of the act of production doctrine during its individualized inquiry into the specific categories of documents.

### a.  Financial Records

Plaintiff seeks Defendant's financial records, including "statements from any savings, checking deposit, brokerage or other accounts [Defendant] has maintained from April 2016 to present" (Dkt. #41 at p. 10).

Defendant did not prepare his bank statements. Rather, financial statements are business records prepared by the financial institution itself. "Where the preparation of business records is voluntary, no compulsion is present." *United States v. Doe* (*Doe II*), 465 U.S. 605, 610 (1984). Compulsion is a necessary element for a valid Fifth Amendment claim, "for the privilege protects a person only against being incriminated by his own compelled testimonial communications."[2] *Fisher*, 425 U.S. at 409 (first citing citing *Schmerber v. California*, 384 U.S. 757 (1966); next citing *United States v. Wade*, 388 U.S. 218 (1967); and next citing *Gilbert v. California*, 388 U.S. 263 (1967)). Because Defendant did not create the financial records, the only potential avenue for protection comes from the act of production doctrine. The "production of the [records] by [Defendant] would not authenticate them" because "they were not prepared by [Defendant]." *United States v. Klir*, No. S-78-31-CA, 1979 WL 1563, at *2 (E.D. Tex. Dec. 7, 1979). Thus, the act of production doctrine is inapplicable. The Court is sufficiently satisfied that the production of the documents has no testimonial aspect that would lend itself to privilege under the Fifth Amendment. The Court therefore finds that Defendant has no valid Fifth Amendment privilege over the financial records sought by Plaintiff in Plaintiff's request for production number two.

### b. Documents Concerning Items' Disposition

Plaintiff also seeks "[a]ll documents and communications concerning the sale, pawn, or other disposition of any gold rings or other items that [Defendant] took from [Plaintiff] at any point from April 2016 to the present," "[a]ll documents evidencing the sale of gold or precious stones by [Defendant] since April 29, 2016," and "[a]ll documents or communications concerning

---

[2] In *Fisher*, the Supreme Court considered whether the production of an accountant's workpapers in the taxpayer's possession violates the Fifth Amendment—not bank records in the possession of a bank. However, the Court finds the logic parallel: the records are not Defendant's, the records were not prepared by Defendant, and the records "contain no testimonial declarations" made by Defendant. *Fisher*, 425 U.S. at 409. Further, analogous to the accountant's workpapers, the making of the bank records was "wholly voluntary"—thus, by definition, not compelled. *Id.*

[Defendant's] transactions with any pawn shops since April 29, 2016" (Dkt. #41, Exhibit 3 at pp. 4; 16–17).  In support of its request, Plaintiff asserts that it knew Defendant was pawning the items. Further, Plaintiff claims that that its knowledge of the existence of the records renders the act of production doctrine inapplicable under the foregone conclusion exception.[3]

Similar to financial records, the documents sought by Plaintiff are "business records" voluntarily prepared by a third party—in this instance, pawn shops.   Thus, Defendant must again rely on the act of production doctrine.  Plaintiff knows that the records exist.  In fact, Plaintiff has received verification of the records' existence from a national database of pawnshop transactions. Thus, "the existence and location of the papers are a foregone conclusion" and Defendant "adds little or nothing to the sum total of [Plaintiff's] information by conceding in fact that he in fact has the papers."  *Fisher*, 425 U.S. at 411.  Defendant therefore has no valid Fifth Amendment privilege over the documents sought in Plaintiff's request for production numbers one, thirty-three, and thirty-four.

### c.  Gambling Records

Plaintiff further requests production of "[a]ll documents or communications concerning [Defendant's] transactions with any casinos since April 29, 2016," "[a]ll documents concerning [Defendant's] membership in Choctaw Casinos & Resorts Rewards Club or WinStar World Casino and Resort Club Passport," "[a]ny win/loss statements available from Choctaw Casinos & Resorts or WinStar World Casino and Resort," and "[a]ll documents concerning any visits by [Defendant] to Choctaw Casinos & Resorts or to WinStar World Casino and Resort since April 29, 2016" (Dkt. #41, Exhibit 3 at p. 18).

---

[3] Defendant's assertion of the Fifth Amendment privilege is broad, and in his response to Plaintiff's motion, Defendant merely states that "[c]ertainly, any information [Defendant] provides in response to these requests would be incriminating" (Dkt. #44 at p. 5).

Notably, the Fifth Amendment privilege "protects an individual from being compelled to disclose information that could reasonably be expected to furnish evidence needed to prosecute the claimant for a crime." *Steinbrecher v. C.I.R.*, 712 F.2d 195, 197 (5th Cir. 1983) (first citing *Kastigar*, 406 U.S. at 445; and then citing *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). The privilege does not apply to *any* incriminating disclosure; however, but rather it "applies only when the possibility of self-incrimination is a real danger, not a remote and speculative possibility." *Id.* "The claimant must be faced with substantial hazards of incrimination from the information sought, and: 'The witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself—his say-so does not of itself establish the hazard of incrimination.'" *Id.* (quoting *Hoffman*, 341 U.S. at 486). Defendant offers no explanation as to how the gambling records are incriminating—rather, he offers a blanket assertion of the privilege in his response to Plaintiff's requests for production and seems to abandon the argument altogether in his response to Plaintiff's motion to compel. No facts indicate that the information contained within the gambling records are incriminating. Additionally, even assuming the Fifth Amendment arguably applied, the records were produced in the course of business by the casinos—not by Defendant. Requiring Defendant to produce the documents will neither admit their existence—in fact, Defendant has admitted the records exist by asserting that his winnings supplied the funds necessary for his purchase of various assets—and location nor implicitly cause Defendant to authenticate the documents. Rather, "production would express nothing more than [Defendant's] belief that the papers are those described" in the requests for production" because Defendant "did not prepare the papers and could not vouch for their accuracy." *Fisher*, 425 U.S. at 412–13. The Court therefore finds that the records are not protected by the Fifth Amendment privilege asserted by Defendant.

### d. Documents Concerning Assets Acquired

Plaintiff seeks various documents that should "reflect assets [Defendant] has acquired with the proceeds of the property he took from [Plaintiff]" (Dkt. #41 at p. 14). These records include "personal financial statements, financial statements for any businesses [Defendant] owns, documents regarding real and personal property, such as deeds of trust, mortgages, appraisals, certificates of title, inventories, contracts, receipts, promissory notes, insurance policies, loan applications, and the like, as well as documents regarding the specific real property, vehicles, and boats that were the subject of the preliminary 'asset freeze' injunction entered in this case" (Dkt. #41 at p. 15).

"Production of documentary materials created or authenticated by a State or the Federal Government, such as automobile registrations or property deeds, would seem ordinarily to fall outside the protection of the [Fifth Amendment] privilege." *Fisher*, 425 U.S. at 426 (Brennan, J., concurring). Notably, "the Fifth Amendment does not protect the contents of pre-existing, voluntarily prepared documents" because the protection "does not extend to writing that was not itself compelled." *United States v. Hubbell*, 167 F.3d 552, 567 (D.C. Cir. 1999) (first citing *Fisher*, 425 U.S. at 409; and then citing *Doe II*, 465 U.S. at 612, n.10). Further, the act of producing the documents does not admit the documents exist, admit the documents are in the possession or control of defendant, or authenticate the documents. Thus, neither the Fifth Amendment, nor its act of production doctrine, protects the documents sought in Plaintiff's request for production numbers four, five, seven through thirty-two, and forty-three through fifty-six.

### e. Communications Between Defendant and Third-Party Regarding Sale of Assets

Plaintiff "seek communications between [Defendant], on the one hand, and any agent representing him [for] the sale of jewelry or precious stones and/or any person to company to

which [Defendant] sold jewelry or precious stones, on the other hand" (Dkt. #41 at p. 16).
Regarding Defendant's invocation of the Fifth Amendment, Plaintiff asks the Court to "find that
[Defendant's] objections are not specific enough" (Dkt. #41 at p. 17).

To properly invoke the Fifth Amendment privilege, a party must "object with specificity
to the information sought from him," which, in turn, "permits the district court to rule on the
validity of his claim of privilege." *S.E.C. v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 668 (5th
Cir. 1981). "[A] blanket invocation of the [F]ifth [A]mendment privilege is insufficient to relieve
a civil litigant of the responsibility to answer questions put to him during the civil discovery
process and to claim the privilege with respect to each inquiry." *Id.* at 669 (collecting cases).
However, a blanket assertion of the Fifth Amendment privilege does not necessarily mean that a
person simply reiterated the same objection to every question.  Rather, a party "must present
himself with his records for questioning, and as to each question and each record elect to raise or
not to raise the defense." *Roundtree*, 420 F.2d at 852.  Once a party elects whether or not to raise
the defense as to each request posed, "[t]he district court may then determine by reviewing [the
party's] records and by considering each question whether, in each instance, the claim of self-
incrimination is well-founded." *Id.* (collecting cases).  In the instant case, Defendant has chosen
to invoke the privilege as to each request for production.  Thus, the Court cannot say that the
invocation was "blanket" for Fifth Amendment purposes.

Defendant's objection is not specific enough for the Court to make the finding that the
privilege is well-founded.  The lack of specificity does not, however, equate to an unequivocal
waiver of the privilege—the Court must still make a "particularized inquiry" on the applicability
of the privilege. *See First Fin. Group of Tex., Inc.*, 569 F.2d at 668.  The Court will therefore

require Defendant produce the documents over which he asserts the Fifth Amendment privilege as to Plaintiff's requests for production numbers thirty-six and thirty-seven.

## II.    Waived Objections

Plaintiff argues that Defendant "waived several objections by making boilerplate over broad, unduly burdensome, and relevance objections" (Dkt. #41 at p. 8).  In support, Plaintiff invokes Federal Rule of Civil Procedure 34's specificity language and asserts that Defendant's objections do not meet the requirements as laid out in the rule.

The Court agrees that Defendant has waived several objections by making boilerplate objections.  A response to a request for production "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  FED. R. CIV. P. 34(b)(2)(B).  Further, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection" and "[a]n objection to part of a request must specify the part and permit inspection of the rest."  FED. R. CIV. P. 34(b)(2)(C).  "The party resisting discovery 'must show specifically . . . how each [request] is not relevant or how each question is overly broad, burdensome or oppressive.'"  *Tsanacas v. Amazon.com, Inc.*, No. , 2018 WL 324447, at *2 (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

Plaintiff sent Defendant fifty-six requests for production.  In response, Defendant asserted essentially one objection[4]:

> This request invades Defendant's right of privacy, is impermissibly overbroad and, therefore, oppressive, burdensome, and irrelevant to the subject matter of this action in that it seeks disclosure of personal and private information. This answering Defendant's financial statements and/or tax returns are not relevant to the subject matter of the pending action.  The Fifth Circuit recognizes a public policy against unnecessary public disclosure of tax returns.  The Court may only order their

---

[4] Because the Court analyzed Defendant's repeated Fifth Amendment objection above, it will only discuss the remaining objections offered by Defendant.

> production if they are relevant and where the requesting party shows a compelling
> need for the same, which is a higher standard than regular discovery requests.
> Defendant's financial condition is likewise irrelevant.  Although financial condition
> may be relevant to the pursuit of punitive damages[,] Plaintiff does not claim
> punitive damages here.  This answering Defendant exercises his general right of
> privacy in his financial information.[5]

(Dkt. #41, Exhibit 3).

Defendant claims that the objections "used common words which are commonly used in responses to requests that require a person to retrieve documents possibly not currently in their possession and to produce six (6)[6] years of said documents i.e., bank records and statements" (Dkt. #44 at p. 4).

"Boilerplate" includes language produced in "standardized text" or "ready-made or all-purpose language."  *Boilerplate*, Merriam-Webster Collegiate Dictionary (11th ed. 2007); *Boilerplate*, Black's Law Dictionary (10th ed. 2014).  Defendant used the above objection—or a shortened variation thereof—on fifty-three of his fifty-six responses.  In fact, the objections that utilize the entire paragraph have the exact same grammatical error and substantive flaw in each.[7] Though Defendant does shorten the objection when financial statements are not at issue, the language remains the same: "This request invades Defendant's right of privacy, it is impermissibly overbroad and, therefore, oppressive, burdensome, and irrelevant to the subject matter of this action in that it seeks disclosure of personal and private information" (Dkt. #41, Exhibit 3).

---

[5] Defendant asserts this objection, or a shorter variation thereof, in fifty-three of the fifty-six requests.  Two of the three requests that Defendant asserted a different objection to are not at issue—namely, request numbers one and forty-two.  In its analysis, therefore, the Court will address the third request, number twenty-seven, separate and apart from the other fifty-three.

[6] Defendant asserts the documents sought go back six years.  The Court cannot find a request for any document produced earlier than April 26, 2016—a little less than five years ago.

[7] The grammatical mistake is the period originally inserted in the position where the Court has substituted a comma. The substantive flaw is where Defendant asserts Plaintiff is not seeking punitive damages when Plaintiff is, in fact, seeking them.

Defendant's objection falls squarely within the definition of "boilerplate."  Importantly, the objections do not "state with specificity the grounds for objecting to the request."  FED. R. CIV. P. 34(b)(2)(B).  Defendant's non-compliance with Rule 34 therefore results in a waiver of the posed objections.

One objection—a response to request number twenty-seven—does not contain the boilerplate language.  Rather, Defendant asserts that the request "is unduly burdensome in that it requests documents or information equally available to both parties" (Dkt. #41, Exhibit 3 at p. 14). However, Defendant did not specify "how the discovery requests [are] unduly burdensome in terms of time, expense, or procedure." *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 4942110, at *2 (D. Kan. Nov. 30, 2010).  In fact, Defendant "provided the court with no information about the burden involved in responding" to request number twenty-seven. *Id.*  The Court therefore finds Defendant's unduly burdensome argument unpersuasive. Further, "even if a document is publicly available . . . a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses." *Martino v. Kiewit New Mexico Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015).  Thus, the Court overrules Defendant's objection as to request number twenty-seven.

Ultimately, the Fifth Amendment only potentially applies to one category of documents sought by Plaintiff—communications between Defendant and either any agent representing him or any person or company to which Defendant sold jewelry or precious stones.  Defendant is therefore required to produce the documents sought in request numbers thirty-six and thirty-seven to the Court so the Court may conduct an *in-camera* review of the documents and determine if the privilege asserted is well-founded.  Further, Defendant waived the boilerplate over broad,

burdensome, oppressive, or relevancy objections made in response to fifty-six of fifty-nine requests.  Finally, the Court overrules Defendant's objection to response number twenty-seven.

### CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Compel Responses to Discovery Requests (Dkt. #41) is hereby **GRANTED in part** as detailed in this Order.

Defendant must therefore produce documents in response to Plaintiff's request for production numbers one, four, five, seven through thirty-two, thirty-three, thirty-four, thirty-eight through forty-one, and forty-three through fifty-six within fourteen days of this Order.

It is further **ORDERED** that Defendant produce the documents over which Defendant asserts the Fifth Amendment privilege regarding responses to Plaintiff's request for production numbers thirty-six and thirty-seven to the Court for an *in camera* review within seven days of this Order so that the Court may determine the applicability of the Fifth Amendment privilege asserted by Defendant.

**IT IS SO ORDERED**

**SIGNED this 27th day of January, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE