# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JOSTENS, INC., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| § | Civil Action No. 4:20-CV-00225 |
| v. § | Judge Mazzant |
| § | |
| JERRY DEAN HAMMONS, JR. and § | |
| SANDRA LOUISE ARNOLD HAMMONS, § | |
| § | |
| *Defendants*. § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Modify Preliminary Injunction (Dkt. #118). Having considered the motion and the relevant pleadings, the Court finds the motion should be **GRANTED in part**.

### BACKGROUND

The facts of this case have been more fully set forth in the Court's Memorandum Opinion and Order formalizing the Court's grant of the preliminary injunction against Defendant Jerry Hammons ("Jerry") (Dkt. #13). Briefly, Plaintiff Jostens, Inc. ("Jostens") brought this action against Jerry, alleging he stole gold rings from Jostens' Denton, Texas location while employed there as a security guard. This Court granted Jostens' Motion for Temporary Restraining Order on March 19, 2020, and on April 16, 2020, the Court granted a preliminary injunction against Jerry (Dkt. #13).

The preliminary injunction restricts Jerry "and his agents, servants, employees, and attorneys, and all other persons in active concert or participation with him who receive actual notice of this order by personal service or otherwise" from, among other things, "assigning,

conveying, transferring, encumbering, dissipating, concealing, or otherwise disposing of any assets, moneys, or other property in [Jerry's] name or under his control" (Dkt. #13 at p. 10).

On August 7, 2020, Jostens amended its complaint to add Jerry's wife, Sandra Louise Arnold Hammons ("Sandra"), as a party in this action (Dkt. #26). Jostens alleges that Sandra and Jerry used the proceeds from the stolen items to purchase a number of assets that they could not have afforded otherwise. More specifically, Jostens asserts that Sandra and Jerry:

> claim that they paid for all of their assets using gambling winnings, but even when one considers the amounts [they] claimed in their tax returns for gambling winnings and losses, their income still was not sufficient to pay for all of their assets. The only plausible means by which [Jerry and Sandra] could have acquired their assets was by using the proceeds of the items they stole from Jostens.

(Dkt. #118 at p. 4).

On May 17, 2022, Jostens filed an emergency motion against Jerry and Sandra, asserting they have placed a "For Sale" sign on their 1966 Ford Mustang (the "Mustang") and positioned the vehicle at a prominent spot in front of their home in Valley View, Texas. Jostens claimed this attempt to sell the vehicle was a direct violation of the Court's preliminary injunction. The Court held a hearing on May 24, 2022 (the "Hearing") to determine whether to hold Jerry or Sandra or both in contempt. On May 26, 2022, the Court denied the motion on the grounds that Jerry was not in control of the asset in question and Sandra was not subject to the Court's preliminary injunction (Dkt. #116). However, at the Hearing, the Court indicated it would grant a motion to add Sandra as a party to the original preliminary injunction. Jostens now moves to add Sandra as a party to the preliminary injunction. Sandra responded on June 20, 2022 (Dkt. #136). Jostens replied the same day, supplementing its motion with a transcript from Sandra's deposition (Dkt. #137).

Beginning on June 27, 2022, this case was tried in front of a jury. On June 29, 2022, the jury returned a verdict finding for Plaintiff Jostens, Inc. on all claims against both Defendants. Specifically, the jury found Jerry and Sandra liable for civil theft under the Texas Liability Act and awarded $5 million in damages; the jury found Jerry and Sandra liable for conversion and awarded $2 million in damages; the jury found Jerry liable for breach of fiduciary duty and Sandra liable for knowing participation in breach of fiduciary duty and awarded $1 million in damages. Further, the jury assessed $1 million in punitive damages against Jerry and $500,000 in punitive damages against Sandra. Because it could only recover actual damages on one of the claims, Jostens elected remedies in the amount of $5 million for its successful claim of civil theft.

Following the verdict, the parties discussed issues with the Court that would potentially require post-trial briefing, such as a permanent injunction and the creation of a constructive trust. For this, Plaintiff wished to proceed with its motion to add Sandra to the preliminary injunction against Jerry, hoping to protect any assets in Sandra's control during the period prior to final judgment. Sandra requested that the injunction be limited to prohibiting the sale or transfer of her assets. The parties could not agree on the scope.

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not

required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

### I. Likelihood of Success on the Merits

A plaintiff seeking a preliminary injunction must present a prima facie case of his substantial likelihood to succeed on the merits. *See Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595-96 (5th Cir. 2011)). Discussion on this point is now moot. Plaintiff has succeeded on the merits for all of its claims against both Jerry and Sandra. Further, there is support for a post-trial preliminary injunction in cases where one is necessary "to protect the jury's verdict while briefing and argument continue[s] on post-trial damage issues." *Clearone Commc'ns, Inc. v. Chiang*, No. 2:07-CV-37-TC, 2010 WL 3222405, at *3 (D. Utah Aug. 13, 2010), *aff'd in part sub nom. ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735 (10th Cir. 2011), *and aff'd sub nom. ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200 (10th Cir. 2011); *see also Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996) ("The issues presented by this appeal involve the appropriateness of the posttrial preliminary injunction that was issued by the district court.").[1]

### II. Likelihood of Irreparable Harm

A preliminary injunction is warranted only where the plaintiff shows he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary

---

[1] The Court is unaware of any case law that suggests the standard for a post-trial preliminary injunction differs in any way from a typical, pre-trial preliminary injunction.

4

damages." *Janvey*, 647 F.3d at 600. However, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* For example, a "district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds." *Id.* As such, a plaintiff seeking economic damages is deemed to be irreparably harmed when "a meaningful decision on the merits would be impossible without an injunction." *See id.* (citing *Productos Carnics, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686–87 (5th Cir. 1980)). For instance, a plaintiff seeking economic damages will suffer irreparable harm when the defendant's dissipation of assets would require the plaintiff to initiate "a multiplicity of suits . . . to gain relief." *See Fed. Sav.*, 835 F.2d at 561 (quoting *Lynch Corp. v. Omaha Nat. Bank*, 666 F.2d 1208, 1212 (1981) (internal quotation marks omitted)).

Jostens has demonstrated that it is likely to suffer irreparable injury if a preliminary injunction is not issued against Sandra. A preliminary injunction that prevents Sandra from selling the assets that are in her control—rather than Jerry's—would help ensure that those assets could go toward satisfying the $6.5 million judgment that Jostens is owed. *See Janvey*, 647 F.3d at 600 (finding the plaintiff would suffer irreparable harm because "dissipation of the assets that are the subject of this suit . . . would impair the [district court's] ability to grant an effective relief"). If a preliminary injunction does not issue, on the other hand, and any remaining assets are dissipated, Jostens may be forced to initiate more litigation in the future to be made whole. Although Jostens will likely never recover much from the assets it has already lost, if the Court does not issue an injunction against Sandra, it could lose what little is left of the proceeds from the millions of dollars' worth of stolen gold rings. Thus, Jostens has shown a strong likelihood of irreparable harm.

5

### III. Balance of Hardships

When deciding whether a preliminary injunction should issue, "courts must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). As a result, the Court must balance the hardship Sandra would face against the irreparable harm Jostens would face if a preliminary injunction does not issue—namely, the inability to obtain meaningful relief from this Court and the subsequent need to pursue additional lawsuits.

As previously mentioned, Jostens will likely never recover much of the assets it has already lost. If the Court does not issue an injunction against Sandra, it could lose even more. Sandra responds that the hardship she will face outweighs the hardship that Jostens potentially faces. She contends that she is already tens of thousands of dollars in arrears for attorneys' fees for this matter. Because she will require Jostens' and this Court's approval each time she makes a purchase on a debit card or cashes a check—thereby requiring assistance of her attorney—she simply cannot afford a preliminary injunction of this scope.

The Court is sympathetic to this argument. Sandra no doubt faces hardship due to her current financial situation. But much of this hardship was self-induced. Jerry and Sandra had filed for bankruptcy in 2016. A short time later, at the first sign of increased wealth—wealth the jury determined was accumulated from ill-gotten gains—Sandra and Jerry began making extravagant purchases. Evidence at trial showed that Jerry and Sandra bought with the proceeds of the stolen rings multiple vehicles, a house with land, exotic pets like llamas and peacocks, international travel, etc. The Court will not shield Sandra from the consequences of these choices at the expense of Jostens. So, although the Court recognizes the hardship Sandra will face pursuant to the asset freeze against her, the Court finds the balance of the hardship weighs in favor of Jostens.

That said, the proposed preliminary injunction would create serious hardships on Sandra's ability to conduct her routine affairs. For this reason, the Court will modify the proposed preliminary injunction to ease the burden on Sandra while protecting Jostens' right to a meaningful recovery.

## IV.  The Public Interest

Lastly, for a preliminary injunction to issue, the injunction must not disserve the public. The Court sees no reason why an injunction would do so in this circumstance. To the contrary, the requested injunction furthers the public's interest in protecting against civil theft, conversion, and breach of fiduciary duty, which, evidenced by its award of $1.5 million in punitive damages, the jury found noteworthy. *See Joshua Ropa v. Fox*, No. 4:16-cv-752, 2016 WL 6248743, at *4 (E.D. Tex. Oct. 26, 2016); see also *Tujague*, 2018 WL 4816094, at *4.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Modify Preliminary Injunction (Dkt. #118) is **GRANTED in part**.

It is hereby **ORDERED** that Sandra Hammons and her agents, servants, employees, and attorneys, and all other persons in active concert or participation with her who receive actual notice of this order by personal service or otherwise, are hereby enjoined from:

> a. transferring, liquidating, converting, selling, loaning, pledging, assigning, granting a lien or security interest or other interest in, concealing, dissipating, spending, gambling, withdrawing, or otherwise disposing of, or assisting others in transferring, liquidating, converting, selling, loaning, pledging, assigning, granting a lien or security interest or other interest in, concealing, dissipating, spending, gambling, withdrawing, or otherwise disposing of, any personal or business assets, now existing or hereinafter acquired, including but not limited to real and/or personal property, "goods," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes," "instruments" (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, accounts, credits, premises, receivables, funds, and cash (collectively, "Assets"), wherever located, whether owned, controlled, held by, in whole or in part, for the benefit of, or subject to access by, or belonging to Mrs.

Hammons, in the actual or constructive possession of Mrs. Hammons, or in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any business organization, trust, partnership, or other entity directly or indirectly owned, managed, or controlled by or under common control with Mrs. Hammons, including, but not limited to, any Assets held by or for Mrs. Hammons in any account at any bank or savings and loan institution, or with any precious metal dealer, mobile payment application, credit card processing agent, automated clearing house processor, network transaction processor, bank debit processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, or other financial institution or depository of any kind, without the prior written consent of Jostens or court approval;

b. opening or causing to be opened any safety deposit boxes, safe, vault, commercial mail boxes, or storage facilities titled in Mrs. Hammons' name, or subject to access by Mrs. Hammons or under Mrs. Hammons' control, without providing Jostens' attorneys prior notice and an opportunity to inspect the contents in order to determine that they contain no Assets covered by this Order;

c. incurring liens or encumbrances on real property, personal property, or other assets in the name, singly or jointly, of Mrs. Hammons and/or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by Mrs. Hammons; and/or

d. wasting, injuring, or otherwise impairing any property in Mrs. Hammons' possession to devalue the property or make it unsalable.

It is further **ORDERED** Jostens is not required to post any bond in connection with this order modifying the preliminary injunction.

It is further **ORDERED** that this Order shall take effect immediately and shall remain in effect until such time as the Court modifies or dissolves it.

Except as expressly modified herein, this Order has no effect on the existing preliminary injunction (Dkt. #13), which remains in effect until further order of the Court.

**IT IS SO ORDERED**.

**SIGNED this 1st day of July, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE